## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| TTAC PUBLISHING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00696 |
| | ) | |
| TATC PUBLISHING, LLC; | ) | |
| DEC GOLDMAN, INC.; | ) | |
| JONATHAN HUNSAKER; JEFF | ) | JUDGE RICHARDSON |
| HAYS; MANNY GOLDMAN; | ) | MAGISTRATE JUDGE FRENSLEY |
| and PATRICK GENTEMPO, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MANNY GOLDMAN AND DEC GOLDMAN, INC'S MOTION TO DISMISS PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

This case involves a trademark and business dispute between two internet-based Nevada limited liability companies, one of which purports to have a principal place of business in Tennessee. Based upon these purported connections, Plaintiff TTAC Publishing, LLC ("TTAC") seeks to haul two Florida residents, Defendants Manny Goldman and DEC Goldman, Inc. ("DEC Goldman"), into a Tennessee court based on Defendant TATC Publishing, LLC's ("TATC") alleged connections to Tennessee. However, TTAC has failed to make a *prima facie* case that this Court has personal jurisdiction over Mr. Goldman or DEC Goldman or that this District is a proper venue. TTAC has also failed to state a claim against either defendant.

The Amended Complaint [Doc. 48] is TTAC's second attempt to state a claim against Mr. Goldman. The Amended Complaint merely adds conclusory allegations in the opening paragraphs in an attempt to establish personal jurisdiction, which amount to an allegation that the Defendants' allegedly tortious conduct was directed at or intended to cause harm to TTAC "in this District."

02551158 7

[Doc. 48, ¶¶ 13, 18].  TTAC, however, fails to describe how Defendants' alleged actions specifically targeted or were directed toward Tennessee.  TTAC also fails to identify any actions taken by Mr. Goldman or DEC Goldman specifically.  As a result, the Amended Complaint should be dismissed for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

## BACKGROUND

TTAC is a company that markets information relating to health care in the areas of cancer, cancer prevention and cancer treatment.  [Am. Compl., Doc. 48, at ¶ 22].  Though TTAC is a Nevada limited liability company, it alleges that its principal place of business is in Portland, Tennessee and that it has operated out of Tennessee since 2015.  [*Id.* ¶ 1].  Tellingly, TTAC does not include in its Amended Complaint the fact that TTAC changed its principal office from a Nevada address to a Tennessee address in its 2019 Annual Report, which it submitted to Tennessee on March 12, 2020.  *See* [Filing Information from the Tennessee Secretary of State's website, Doc. 47-1].[1]  As set out more fully below, TTAC's formal move to Tennessee occurred **after** virtually all of the alleged wrongful conduct occurred in this matter.

---

[1] In general, a court may take judicial notice of a public record "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (citing Fed. R. Evid. 201(b)(2); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (collecting cases)).  In this case, the Court may take judicial notice of the date that TTAC changed its listed principal office on its Tennessee annual report because it is not subject to reasonable dispute.  *See Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 23 (D.D.C. 2018) (taking judicial notice of a corporate filing when evaluating a motion to dismiss for lack of personal jurisdiction); *Mullin v. SouthEast Bank*, No. 2:18-CV-00046, 2019 WL 2482162, at *9 (M.D. Tenn. Feb. 4, 2019), *report and recommendation adopted in part, rejected in part on other grounds sub nom. Mullin v. Se. Bank*, No. 2:18-CV-00046, 2019 WL 1055762 (M.D. Tenn. Mar. 6, 2019) (same).

Beginning in 2015, TTAC contracted with Mr. Goldman to assist in its marketing endeavors. [Doc. 48, at ¶ 30]. TTAC further alleges that in late 2018, the co-owners of TTAC had a falling out, and Defendant Jason Hunsaker ("Hunsaker") severed ties with TTAC. [*Id.* ¶ 33]. Over a year later, in January of 2020, Hunsaker, along with Defendants Jeff Hays, Patrick Gentempo, and Mr. Goldman, formed TATC. [*Id.* ¶ 34].

Claiming that TATC was violating TTAC's trademark and engaged in unfair competition under Federal and Tennessee law, among other causes of action, TTAC filed suit in this Court against TATC, DEC Goldman, Hunsaker, Hays, Gentempo, and Mr. Goldman. [Doc. 1, 48]

Mr. Goldman is an individual who resides in Ponte Vedra, Florida. [Doc. 48, at ¶ 7]. Because of his marketing work for TTAC, TTAC alleges that Mr. Goldman is "familiar with TTAC's business and marketing strategies" and "well-versed in TTAC's utilization of its trademarks." [*Id.* ¶ 30, 39]. However, apart from familiarity with TTAC and cursory allegations of participation in the alleged conduct with or through TATC, TTAC does not allege that *Mr. Goldman or DEC Goldman* specifically undertook any of the actions of which it complains.

The picture becomes clearer when the additional facts put forth by Mr. Goldman are considered.[2] Mr. Goldman formerly lived in New York and owned Real Growth Worldwide Corp. ("RGW"), a New York corporation with a principal place of business in New York. [Declaration of Manny Goldman ("Goldman Decl."), Doc. 47-2, at ¶ 5]. RGW provided marketing services to

---

[2] Mr. Goldman and DEC Goldman assert that TTAC has failed to make a *prima facie* case for personal jurisdiction, as discussed *infra*. However, in accordance with standard practice and in the interest of judicial economy, Mr. Goldman and DEC Goldman have also provided additional facts for the Court's consideration as it exercises its discretion in adjudicating this motion, as well as the motion to dismiss for lack of personal jurisdiction filed by Defendants TATC, Hays, and Gentempo.

TTAC starting in May of 2015, pursuant to an Independent Contractor Agreement. [*Id.* ¶ 6; Doc. 47-3]. The Independent Contractor Agreement identified TTAC as a Nevada limited liability company and included a Nevada choice-of-law provision. [Doc. 47-3, p. 1, 4].

Mr. Goldman subsequently moved to California and formed DEC Enterprises, Inc. ("DEC"), a California corporation with a principal place of business in California. [Doc. 47-2, at ¶ 7]. In August of 2018, DEC contracted with TruNorth Management, LLC ("TruNorth"), an entity believed to be affiliated with TTAC, to provide marketing services to TTAC through TruNorth pursuant to a Master Services Agreement. [*Id.* ¶ 7–8; Doc. 47-4]. This contract also solely referenced Nevada. [Doc. 47-4, p. 1, 6]. During the course of these contracts, Mr. Goldman believed that two of the co-owners, Ty and Charlene Bollinger, lived in Tennessee, but his communications with them were limited to the occasional phone call or email. [Doc. 47-2, at ¶ 12]. Mr. Goldman never travelled to Tennessee to perform work on behalf of TTAC or TruNorth. [*Id.*]

Mr. Goldman relocated to Florida in August of 2018 and in January of 2020 formed DEC Goldman, a Florida corporation with its principal place of business in Florida. [*Id.* ¶ 16]. DEC Goldman does not conduct business in Tennessee and is not registered to transact business in Tennessee. [*Id.*] DEC Goldman is a member and manager of TATC, which is a Nevada limited liability company. [*Id.* ¶ 17]. DEC Goldman performs its work for TATC from Florida, and, in connection with DEC Goldman's work as managing member of TATC, Mr. Goldman has never communicated or interacted with anyone in Tennessee. [*Id.* ¶ 19]. Moreover, Mr. Goldman has never lived, worked, or owned property in Tennessee, and Mr. Goldman has never been involved in a lawsuit in Tennessee prior to this case. [*Id.* ¶ 4]. TATC alone owns its website and any related

intellectual property, including the logo at issue in this matter. [*Id.* ¶ 21]. Neither DEC Goldman nor Mr. Goldman use, promote, distribute, or market TATC's mark or logo. [*Id.* ¶ 22].

In short, both as pleaded and in fact, Mr. Goldman and DEC Goldman have little to no connection with Tennessee, related to this case or otherwise. Mr. Goldman never expected that, should TTAC, TruNorth, or TATC have disputes, he would be haled into court in Tennessee. [*Id.* ¶ 23].

## STANDARD OF REVIEW

## I.     PERSONAL JURISDICTION

"Motions to dismiss under Rule 12(b)(2) involve burden shifting." *Malone v. Stanley Black & Decker, Inc*., 965 F.3d 499, 504 (6th Cir. 2020). At the outset, the plaintiff bears the burden of establishing a *prima facie* case for personal jurisdiction. *Id.*; *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996)). This burden requires the plaintiff to facially establish personal jurisdiction "over each defendant *independently*," *Beydoun*, 768 F.3d at 504 (emphasis added) (quoting *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006)), and plead "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F. 3d 883, 887 (6th Cir. 2002).

If the plaintiff establishes a *prima facie* case for personal jurisdiction, the burden then shifts to the defendant, whose motion to dismiss must be "properly supported with evidence." *Malone*, 965 F.3d at 504 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). If the defendant has met that burden, the burden shifts back to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Theunissen*, 935 F.2d at 1458).

The Court has discretion in resolving personal jurisdiction disputes. *Id.* at 505 (citing *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). The Court "'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Serras*, 875 F.2d at 1214). If the Court determines the motion based on affidavits, the *prima facie* burden remains the same. *Id.* Indeed, the Court "does not weigh the facts disputed by the parties but may consider the defendant's undisputed factual assertions."[3] *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). However, if the Court holds an evidentiary hearing, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Malone*, 965 F.3d at 505 (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)).

Here, Mr. Goldman and DEC Goldman contend that TTAC has not even met its "relatively slight" burden "to establish, with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause." *Id.* at 504–05. Nevertheless, Mr. Goldman also provides a declaration outlining additional facts regarding jurisdiction in the interest of judicial economy, should the Court disagree.

_____

[3] A court in this District has concluded that *Malone* stands for the proposition that "the defendant cannot contest jurisdiction on the basis of a 'written submission[ ]' such as an affidavit. The defendant, rather, must either request an evidentiary hearing or restrict his argument to challenging the adequacy of the *prima facie* case as set forth in the complaint and any supporting materials." *Willock v. Hilton Domestic Operating Co*., No. 3:20-CV-00042, 2020 WL 4207651, at *3 (M.D. Tenn. July 22, 2020) (citing *Malone*, 965 F.3d at 505). Respectfully, Mr. Goldman suggests that *Malone* does not sweep so broadly. The Sixth Circuit has held that, when ruling on the motion without an evidentiary hearing, courts "may consider the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *see Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147, 153 (6th Cir. 1997) ("*Theunissen* does not require a court to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff."); *see, e.g.*, *Camps v. Gore Capital, LLC*, No. 3:17-CV-1039, 2019 WL 2763902, at *4 (M.D. Tenn. July 2, 2019) (Richardson, J.).

02551158 7

6

## II. VENUE

Rule 12(b)(3) motions provide a procedural vehicle for deficiencies that arise under 28 U.S.C. § 1391 and follow the same framework as 12(b)(2) motions. *See, e.g.*, *E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 963 (E.D. Tenn. 2009). The venue requirements set out in 28 U.S.C. § 1391 are explained in detail in Co-Defendants' motion to dismiss, which Mr. Goldman and DEC Goldman have joined regarding venue. [Doc. 56, pp. 8–10; *see also* Doc. 62, pp. 12–13].

## III. FAILURE TO STATE A CLAIM

Rule 12(b)(6) motions to dismiss require the Court to construe the complaint in favor of the plaintiff, accept the factual allegations set forth in the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the allegations of a complaint must be accepted as true, the Court need not "accept as true legal conclusions or unwarranted factual inferences." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Twombly*, 550 U.S. at 556 (holding that a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

## ARGUMENT

TTAC has not made a *prima facie* case that the exercise of personal jurisdiction over Mr. Goldman or DEC Goldman would satisfy the constitutional limitations set forth in the Due Process Clause of the Fourteenth Amendment, and the Court thus lacks personal jurisdiction. Moreover,

7

the Middle District of Tennessee is an improper venue, and Mr. Goldman and DEC Goldman join

Co-Defendants' motions to dismiss in this regard.  Lastly, TTAC has failed to state a claim for

trademark infringement, unfair competition, violations of the Tennessee Consumer Protection Act,

or civil conspiracy upon which relief can be granted against Mr. Goldman or DEC Goldman.

## I.  THE COURT LACKS PERSONAL JURISDICTION OVER MR. GOLDMAN AND DEC GOLDMAN.

For a court to exercise personal jurisdiction, jurisdiction must be consistent with the Due

Process Clause of the Fourteenth Amendment and authorized by the forum state's long-arm statute.

*Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).   Because  Tennessee's long-arm statute is

"coterminous" with the Due Process Clause, the inquiries merge.  *Intera Corp. v. Henderson*, 428

F.3d 605, 616 (6th Cir. 2005).  The Due Process Clause requires that a defendant have "certain

minimum contacts" with the forum state so that "the maintenance of the suit does not offend

traditional notions of fair play and substantial justice."  *Youn*, 324 F.3d at 417 (quoting *Int'l Shoe

Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Courts recognize two types of personal jurisdiction: general  personal  jurisdiction and

specific personal jurisdiction.  *Intera Corp.*, 428 F.3d at 615.  "General jurisdiction exists when a

defendant's 'contacts with the forum state are of such a continuous and systematic nature that the

state may exercise personal jurisdiction over the defendant even if the action is unrelated to the

defendant's contacts with the state.'"  *Id.* (quoting *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir.

2002)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the

individual's domicile . . ." *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct.

1773, 1779 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918

(2011)).

On the other hand, specific personal jurisdiction analyzes only the contacts related to the plaintiff's cause of action, requiring that the claims "arise from or are related to the defendant's contacts with the forum state." *Intera Corp.*, 428 F.3d at 615. Courts in the Sixth Circuit apply a three-prong test for determining if specific personal jurisdiction exists: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; (2) the claims "must arise from the defendant's activities there"; and (3) these acts or consequences that give rise to the claim "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Here, TTAC has not met its burden to establish independently that a Tennessee court has personal jurisdiction over Mr. Goldman or DEC Goldman. Tennessee does not have general personal jurisdiction over Mr. Goldman or DEC Goldman because they are not domiciled in or residents of Tennessee. The issue in this case is specific personal jurisdiction, and TTAC does not meet the three-prong test.

### A. The Court Lacks General Personal Jurisdiction Over Mr. Goldman and DEC Goldman Because Neither Are Domiciliaries of Tennessee.

Plaintiff has alleged no facts which show that Mr. Goldman or DEC Goldman is subject to general jurisdiction in Tennessee. "General jurisdiction allows a plaintiff to sue a defendant 'on any and all claims,' regardless of the connection (or lack thereof) between the claim and the forum." *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014)). A corporation is paradigmatically subject to general jurisdiction in "the corporation's place of incorporation and its principal place of business," but in an "exceptional case," a nonresident corporation may be subject to general jurisdiction where its contacts "are so 'continuous and systematic' as to render them

essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG*, 571 U.S. at 139). However, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co*., 137 S. Ct. at 1780 (quoting *Goodyear Dunlop*, 564 U.S. at 918). "Generally, an individual's domicile is his true, fixed, and permanent home and principal establishment . . . [and] . . . is the place to which he returns whenever he is absent.'" *United States v. Namey*, 364 F.3d 843, 845 (6th Cir. 2004) (quoting *Eastman v. Univ. of Mich*., 30 F.3d 670, 672–73 (6th Cir. 1994)).

Here, Mr. Goldman's true, fixed, and permanent home and principal establishment is in Florida, not Tennessee, and he is not a domiciliary of Tennessee. Likewise, DEC Goldman is a Florida corporation with its principal place of business in Florida. Moreover, though TTAC cursorily alleges that "Defendants" engage in the "transaction of business in Tennessee," [Doc. 48, at ¶ 12], TTAC has not identified any connection between Mr. Goldman and Tennessee or DEC Goldman and Tennessee and does not specifically allege that either does any business in Tennessee.

In short, Mr. Goldman and DEC Goldman are not domiciliaries or residents of Tennessee and TTAC has not alleged any continuous and systematic contacts between them and Tennessee; general personal jurisdiction does not exist. *See Red Strokes Entm't, Inc. v. Sanderson*, No. 3:12-CV-0008, 2012 WL 1514892, at *7 (M.D. Tenn. May 1, 2012).

### B. The Court Lacks Specific Personal Jurisdiction Over Mr. Goldman and DEC Goldman Because TTAC Cannot Satisfy the Three Prong *Mohasco* Test.

Specific jurisdiction also does not exist in this case. "Specific jurisdiction 'exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum.'" *Servpro Intell. Prop., Inc. v. Zerorez Franchising Sys., Inc*., No. 3:17-CV-00699-JPM, 2018 WL 3364372, at *4 (M.D. Tenn. July 9, 2018) (quoting *Kerry Steel, Inc. v. Paragon*

02551158 7                                                    10

*Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)).  In *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d

374 (6th Cir. 1968), the Sixth Circuit set out the following three-prong test in order to establish

specific jurisdiction over an out-of-state defendant such as Mr. Goldman:

> (1) the defendant must purposefully avail himself of the privilege of
> acting in the forum state or causing a consequence in the forum state;
>
> (2) the cause of action must arise from the defendant's activities [in or
> contacts with the forum state]; and,
>
> (3) the acts of the defendant or consequences caused by the defendant
> must have a substantial enough connection with the forum state to
> make the exercise of [personal] jurisdiction reasonable.

*Id.* at 381.

Here, TTAC has amended its complaint, attempting to cure prior jurisdictional deficiencies

by suggesting various theories of personal jurisdiction are applicable.  Nevertheless, TTAC's

additional allegations still fail to establish specific personal jurisdiction over Mr. Goldman or DEC

Goldman.

As an initial matter, TTAC's claims are all premised upon its allegations that Mr. Goldman

and DEC Goldman and the other defendants breached TTAC's trademarks.  As discussed below,

it is against this backdrop that TTAC's claim of personal jurisdiction should be evaluated.  To that

end, TTAC broadly alleges that the "Court has personal jurisdiction over Defendants based on

their transaction of business in Tennessee and sufficient minimum contacts with Tennessee and in

light of their interactive website." [Doc. 48, p. 3, ¶ 12].  However, even assuming the website was

sufficiently interactive to create personal jurisdiction over TATC in Tennessee,[4] TTAC has not

---

[4] Mr. Goldman and DEC Goldman join TATC in asserting that TTAC has not made a *prima facie*
case of personal jurisdiction over TATC through TATC's website and incorporates those
arguments herein. [Doc. 56, pp. 5–7].

alleged that Mr. Goldman or DEC Goldman own or operate that website or that either directs was involved with use of the website to create relationships with consumers in Tennessee. *See SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 356 (6th Cir. 2014) ("Jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000); *see Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) (ownership of corporate entity does not constitute purposeful availment). TTAC's allegations are insufficient to establish *prima facie* specific personal jurisdiction over Mr. Goldman or DEC Goldman through this theory.

Moreover, TTAC's other allegations fail to facially establish the elements of the *Mohasco* test as to Mr. Goldman or DEC Goldman. First, TTAC has not established that Mr. Goldman or DEC Goldman purposefully availed themselves of Tennessee. Second, TTAC's causes of action do not arise from the attenuated Tennessee contacts that TTAC has alleged. Third, it would be unreasonable for TTAC to drag Mr. Goldman or DEC Goldman into a Tennessee court to defend these claims.

> **1. Neither Mr. Goldman nor DEC Goldman have purposefully availed themselves of Tennessee as a forum state.**

The first prong of the *Mohasco* test is whether the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state or causing a consequence in the forum state," *Intera Corp.*, 428 F.3d at 615. This prong asks whether a defendant has caused something to be done in the forum state or had an effect to the point that he has substantial contacts with the forum state. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003). Purposeful availment may be established when a foreign party's actions are "purposefully directed

toward residents of another State." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir. 1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Here, TTAC has newly attempted to pave two roads to purposeful availment. However, neither road reaches its destination. First, TTAC has not alleged sufficient facts to establish *prima facie* purposeful availment by Mr. Goldman or DEC Goldman based on previous business dealings with TTAC. Second, TTAC has not alleged facts sufficient to establish *prima facie* purposeful availment by Mr. Goldman or DEC Goldman based on intentional tortious conduct directed towards the forum state.

### a. Prior business dealings with TTAC do not establish purposeful availment.

TTAC alleges, in relevant part, that "Manny Goldman purposefully availed [himself of Tennessee law] by conducting business with Plaintiff in this District." [Doc. 48, at ¶ 14]. However, TTAC immediately abandons the form of this theory and reveals its substance when it specifically alleges that "Goldman tortuously [sic] used [his] intimate knowledge of TTAC's confidential marketing and advertising information, confidential newsletter, and trademarks, which they accessed and collected while a . . . contractor . . . of TTAC." [*Id.*] This cursory allegation is facially deficient to establish personal jurisdiction.

As an initial matter, TTAC's allegations regarding Mr. Goldman's knowledge from prior work for TTAC are a jurisdictional red herring. TTAC has pursued several causes of action, but each of these claims are derived from a dispute over *publicly available* trademarks. None of TTAC's causes of action, all of which stem from alleged trademark infringement by TATC, are affected by or dependent upon Mr. Goldman's prior work with TTAC. Consequently, TTAC's allegations about Mr. Goldman's prior work are irrelevant and cannot form the basis for purposeful availment of Tennessee regarding trademark causes of action. *See Beydoun*, 768 F.3d at 506–507

("[T]he cause of action must . . . have a substantial connection with the defendant's in-state activities."); *see also Intera Corp.*, 428 F.3d at 617 (finding that acquiring "know how" about a company's trade secrets through a third-party licensing agreement did not establish purposeful availment).

Moreover, simply contracting to do business with an entity that may or may not operate out of the forum state does not constitute purposeful availment. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722–24 (6th Cir. 2000) (holding that a contract was not sufficient to satisfy due process when none of the terms of the contract was to be performed in the forum state); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *see, e.g. Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) (finding that a contractual relationship between the parties did not suffice to establish purposeful availment). While TTAC has amended its complaint to superficially allege that TTAC has been operating its business in Tennessee since 2015, TTAC does not allege that *Mr. Goldman or DEC Goldman* conducted any work in or related to Tennessee. Likewise, TTAC does not allege that Mr. Goldman knew that TTAC, a Nevada LLC, was operating from Tennessee. While Ty and Charlene Bollinger may or may not be Tennessee residents, TTAC was and is an entity separate and apart from these individuals, and their residency or activities cannot be casually attributed to TTAC without explanation or specificity, let alone provide a basis for specific jurisdiction over Mr. Goldman or DEC Goldman. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("'[M]inimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

14

Instead, "[p]urposeful availment happens when the defendant *personally* takes actions that create a 'substantial connection' with the forum state such that he can 'reasonably anticipate being haled into court there.'" *SFS Check*, 774 F.3d at 356 (emphasis added) (quoting *Neogen Corp.*, 282 F.3d at 889). TTAC does not allege that *Mr. Goldman or DEC Goldman* undertook any specific business activity in or directed toward Tennessee. And while TTAC may allege that it has been operating its business in Tennessee since 2015, this allegation conflicts with its own representations to the State of Tennessee through its filings with the Tennessee Secretary of State.

Further, the additional facts set forth by Mr. Goldman fill in the gaps left by TTAC's pleadings and make it clear that neither Mr. Goldman nor DEC Goldman purposefully availed themselves of Tennessee. Mr. Goldman did communicate with the Bollingers, who may be Tennessee residents, over the phone or by email on occasion between 2015 and 2018, Goldman Decl. ¶ 12, but "[t]he use of interstate facilities (telephone, the mail)" is merely a "secondary or ancillary factor[] and cannot alone provide the 'minimum contacts' required by due process." *Smartvue Corp. v. Mistral Software PVT. LTD.*, No. 3:11-1145-KHS, 2012 WL 3000144, at *4 (M.D. Tenn. July 23, 2012) (finding no purposeful availment and quoting *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982)); *see also id.* at *4 (defendant had made multiple deliveries to Tennessee, but this was not enough to establish personal jurisdiction.); *Noval Int'l Res., LLC v. Andec, Inc.*, 875 F. Supp. 2d 804, 811 (W.D. Tenn. 2012) (holding that "the use of interstate facilities such as the telephone and mail is a secondary factor and cannot alone provide the minimum contacts required by due process"). Even still, Mr. Goldman's work for TTAC was completed through contracts between RGW and DEC and TTAC and TruNorth. Those contracts listed Nevada addresses for TTAC and TruNorth and included Nevada choice-of-law provisions,

leading Mr. Goldman to believe that the entities were Nevada-based businesses that were operated remotely.  [Goldman Decl., Doc. 47-2, at ¶ 10].

Put simply, the Amended Complaint does not establish that Mr. Goldman or DEC Goldman purposefully availed themselves of Tennessee by conducting business with TTAC or otherwise. As a result, TTAC has not pled "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F. 3d 883, 887 (6th Cir. 2002).  Mr. Goldman or DEC Goldman's prior "relationship with the plaintiff . . . 'standing alone, is an insufficient basis for jurisdiction.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

### b.     Cursory allegations of intentional tortious conduct do not establish purposeful availment.

TTAC also alleges that "Goldman intended to and did engage in tortious actions using the corporate form of Defendant TATC that were specifically intended to cause harm to TTAC in this District, where TTAC has been operating its business since 2015."  (Am. Compl. ¶ 13).[5]  This theory unsuccessfully attempts to establish that Mr. Goldman or DEC Goldman expressly aimed intentional tortious conduct at the forum state.[6]

---

[5] The following paragraph of the Amended Complaint, which was discussed *supra*, alleges that Mr. Goldman tortiously used his "intimate knowledge" of TTAC.  Again, because this factual allegation is not connected to TTAC's causes of action, it cannot demonstrate purposeful availment for specific personal jurisdiction through the Amended Complaint.  *See Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 506–07 (6th Cir. 2014) (stating that "the *cause of action* must . . . have a substantial connection with the defendant's in-state activities" (emphasis added)).

[6] Additionally, TTAC's unfounded allegation "upon information and belief" that Goldman formed DEC Goldman to "provide an extra layer of protection for Goldman's tortious conduct" is also immaterial and disingenuous.  [Doc. 48, ¶ 17].  When Mr. Goldman performed work as an independent contractor for TTAC, both Mr. Goldman *and* TTAC contracted through intermediary business entities.  *See* [Doc. 47-2, ¶¶ 5–11; Doc. 47-3; Doc. 47-4].

In the Sixth Circuit and others, alleged "violations of federal trademark law are analogous to tort cases." *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002). In tort cases, personal jurisdiction can be established if a plaintiff alleges that a defendant "expressly aimed" tortious conduct at the forum in question and the "brunt of the harm" is felt there. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012).

However, "[t]he Sixth Circuit, as well as other circuits, have narrowed the application of the *Calder* "effects test," such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007) (citation omitted); *see also Higdon v. Cannon*, No. 1:11-CV-194, 2012 WL 424965, at *8 (E.D. Tenn. Feb. 9, 2012) (stating that "the plaintiff must do more than merely allege intentional tortious conduct which has injured a forum state resident"). Consequently, more is required of a plaintiff attempting to establish personal jurisdiction through the *Calder* effects test than allegations of forum state harm and intentional tortious conduct—it requires express aiming of that conduct towards the forum state. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 261–62 (3d Cir. 1998) ("*Calder* did not set forth a per se rule that the allegation of an intentional business tort alone is sufficient to confer personal jurisdiction in the forum where the plaintiff resides.") (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995)); *Am. Pie Pizza, Inc. v. Holton Holdings, Inc*., No. 2:10-CV-13106, 2011 WL 334272, at *9 (E.D. Mich. Jan. 31, 2011) ("Even a showing that the defendant knew about the plaintiff's registered trademark and deliberately infringed upon it will not necessarily satisfy the expressly aimed at prong." (citations omitted)).

Here, even assuming TTAC felt the brunt of its alleged harm in Tennessee (and it is far from clear that it did) and that Mr. Goldman or DEC Goldman engaged in alleged intentional

tortious conduct (which they did not), this theory of purposeful availment hangs on TTAC's allegation that "Defendants'" trademark infringements "were specifically directed to have consequences to TTAC in Tennessee." This threadbare assertion does not even identify specific conduct by Mr. Goldman or DEC Goldman[7] and cannot bear the weight of constitutional demands. *See Neogen Corp.*, 282 F. 3d at 887 (articulating that jurisdictional facts must be pled "with reasonable particularity.")

First, TTAC has not pled facts "with reasonable particularity," *id.*, that Mr. Goldman or DEC Goldman even knew that TTAC operated its business from Tennessee, meaning that any alleged conduct could not have been expressly aimed at Tennessee. TTAC did not publicly identify Tennessee as a principal place of business until March of 2020, well after TATC was formed and operating. Mr. Goldman's prior work with TTAC did not implicate or involve Tennessee. Without a showing that Mr. Goldman or DEC Goldman *knew* that TTAC, which operates a nationwide internet-based business, operated in Tennessee, TTAC cannot establish the "something more" required to establish conduct expressly aimed at Tennessee. *See, e.g.*, *Lifestyle Lift Holding Co. v. Prendiville*, 768 F. Supp. 2d 929, 938 (E.D. Mich. 2011) (rejecting a threadbare allegation that a defendant knew and expressly aimed its conduct at the forum state where the plaintiff presented itself as a nationwide presence).

Second, TTAC has not pled facts "with reasonable particularity," *Neogen Corp.*, 282 F. 3d at 887, that the focal point of any trademark-infringing conduct was in Tennessee, even if Mr. Goldman or DEC Goldman knew TTAC operated in Tennessee. TTAC does not allege that Mr.

---

[7] Co-Defendant Hunsaker discusses this deficiency in detail, and, because the allegations are similarly deficient in this respect, Mr. Goldman and DEC Goldman join and incorporate those arguments by reference. *See* [Doc. 62, pp. 6–10].

Goldman or DEC Goldman specifically engaged in any Tennessee-related activities involving TATC's allegedly infringing marks. *See, e.g.*, *Lifestyle Lift*, 768 F. Supp. 2d at 938 (holding that knowledge of a plaintiff's primary location does not, itself, satisfy the "expressly aimed at prong"); *Am. Pie*, 2011 WL 334272, at *11 (stating that "knowledge alone" of a trademark and its holder's location "was insufficient to satisfy this requirement"); *Providers Access & Saving Sys., Inc. v. The Regence Grp., Inc*., No. 06-15367, 2007 WL 1106145, at *7 (E.D. Mich. Apr. 12, 2007) (holding that, even if the defendants knew of the plaintiff's trademarks and deliberately infringed on those marks, this knowledge did not facially demonstrate that the acts were aimed at the forum).

In short, TTAC's presence in Tennessee does not establish the "express aiming" required by this theory, and TTAC has not pled the required "something more" with reasonable particularity. This road to purposeful availment also stops short of its destination.

In sum, TTAC has not alleged jurisdictional facts with reasonable particularity that Mr. Goldman or DEC Goldman purposefully availed themselves of Tennessee either by conducting business in Tennessee or by expressly aiming intentional tortious conduct at Tennessee.

### 2. TTAC's causes of action do not arise from Mr. Goldman or DEC Goldman's alleged contacts with Tennessee.

To satisfy the "arising from" prong, "the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 506–07 (6th Cir. 2014). "[T]he cause of action must . . . have a substantial connection with the defendant's in-state activities." *Id.* (quoting *Dean*, 134 F.3d at 1275). "Put another way, '[t]he 'arising from' requirement under the second prong [of the *Mohasco* test] is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state.'" *Id.* at 507 (citing *Calphalon Corp.*, 228 F.3d at 723–24). Indeed, "the Supreme Court has emphasized that only consequences that *proximately* result from

a party's contacts with a forum state will give rise to jurisdiction." *Id*. at 508 (citing *Burger King*, 471 U.S. at 474).

As the Supreme Court has made clear, it is *defendant's* contacts with the forum, not the plaintiff's, that must have a causal nexus to plaintiff's claims. *Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). This Court has likewise recognized that overarching principle. *See Camps v. Gore Cap., LLC*, No. 3:17-CV-1039-EJR, 2019 WL 2763902, at *5 (M.D. Tenn. July 2, 2019) (Richardson, J.) ("The unilateral activity of the plaintiff or a third party cannot be the basis of exercising personal jurisdiction over the defendant.").

Here, there is no causal nexus between TTAC's trademark infringement claims and Mr. Goldman or DEC Goldman's random or fortuitous contacts with Tennessee.[8] First, as discussed *supra*, TTAC's trademark infringement claims do not arise from Mr. Goldman's prior work for TTAC; this is a case about trademarks, not trade secrets. Second, TTAC's own alleged Tennessee operations, without more, cannot form the foundation for a causal nexus between Mr. Goldman or DEC Goldman and Tennessee. Third, TTAC has not alleged (not could it) that Mr. Goldman or DEC Goldman "have had contact with Tennessee either in a personal or an official capacity as corporate officers." *Intera Corp.*, 428 F.3d at 618. Lastly, TTAC has not alleged with reasonable particularity that Mr. Goldman or DEC Goldman have expressly aimed intentional tortious conduct at the forum state, as discussed *supra*. This trademark infringement case is between two nationwide internet-based businesses—TTAC and TATC; TTAC simply has not alleged sufficient

---

[8] In fact, TTAC has not alleged that DEC Goldman has *any* contacts with Tennessee.

02551158 7                                            20

facts to establish that its claims arise from Mr. Goldman's or DEC Goldman's virtually nonexistent contacts with Tennessee. *See One Media IP Ltd. V. S.A.A.R. SrL*, 122 F. Supp. 3d 705, 719 (M.D. Tenn. 2015) (holding that "the court is constrained to find that [the plaintiff's] claims do not 'arise from' contacts that are insufficient to establish purposeful availment in the first place.").

### 3. It is unreasonable for TTAC to drag Mr. Goldman and DEC Goldman into Tennessee to defend these claims.

The third prong prevents plaintiffs from imposing jurisdiction where it is unreasonable to do so.[9]  Courts consider three factors to determine reasonableness: "'[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief.'" *Beydoun*, 768 F.3d at 508 (finding third prong not satisfied and quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987)); *accord Intera Corp.*, 428 F.3d at 618.

Here, all three factors weigh strongly against jurisdiction.  First, Mr. Goldman, an individual resident and domiciliary of Florida, and DEC Goldman, a closely-held Florida corporation, would be burdened by having to defend a case in Tennessee.  On the other hand, Florida would be a more appropriate venue for Mr. Goldman or DEC Goldman.  Second, Tennessee has only a limited interest in protecting TTAC's rights; TTAC is a Nevada limited liability company.  While it alleges that it has operated its business in Tennessee since 2015, it only formally identified Tennessee as a principal place of business **after** the alleged conduct about which is complains in its complaint.  Third, TTAC's interest in obtaining relief under the facts alleged is more properly vindicated against *TATC* in an appropriate forum, not by subjecting Mr.

---

[9] "While the first two elements of the [*Mohasco*] test involve a search for the specific types of contacts which have been held essential to the maintenance of jurisdiction, the third demands flexibility and an appraisal of the overall circumstances of each case."  *Lanier*, 843 F.2d at 917 (Krupansky, J., concurring in part) (quoting *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972) (overruled on other grounds).

Goldman or DEC Goldman to a lawsuit in a distant, unfamiliar state simply because TTAC prefers Tennessee.

In short, TTAC also fails to clear the third, "independent hurdle"; asserting jurisdiction over Mr. Goldman would "offend traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113 (quotation omitted). Consequently, TTAC has not established a *prima facie* case that the exercise of jurisdiction over Mr. Goldman and DEC Goldman would be constitutionally reasonable.

Based on each of the three prongs, both individually and collectively, this Court should, as it did in *Camps*, "find[] that Plaintiff has failed to carry [its] burden of demonstrating that the Court has personal jurisdiction over Defendant." *Camps*, 2019 WL 2763902, at *5–7 (granting the motion to dismiss for lack of personal jurisdiction).

## II.    THE MIDDLE DISTRICT OF TENNESSEE IS AN IMPROPER VENUE.

Mr. Goldman and DEC Goldman joins Co-Defendants' motions to dismiss for improper venue and arguments in support. [Doc. 55; Doc. 56, pp. 8–10; Doc. 61; Doc. 62, pp. 12–13]. However, Mr. Goldman and DEC Goldman do not join in the alternative relief requested by Co-Defendants. [Doc. 56, p. 10 n. 3].

Mr. Goldman and DEC Goldman assert that the legal issues addressed in Co-Defendants' motions are equally applicable because venue is equally as improper as to all Defendants, warranting similar treatment.

## III.    MR. GOLDMAN AND DEC GOLDMAN SHOULD BE DISMISSED FROM THIS CASE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Mr. Goldman and DEC Goldman also join Co-Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. [Doc. 56, p. 10–12].

### A. TTAC Has Failed to State a Trademark Infringement, Unfair Competition, or TCPA Claim Against Mr. Goldman or DEC Goldman.

TTAC's trademark infringement, unfair competition, and Tennessee Consumer Protection Act ("TCPA") claims all stem from the same allegations of trademark infringement. Personal liability for trademark infringement requires that a corporate officer direct, control, or be the moving force behind the infringing activity. *See, e.g.*, *Mr. Rooter Corp. v. Combs*, No. 2:09-CV-216, 2010 WL 11639698, at *1 (E.D. Tenn. July 22, 2010).

Here, TTAC only broadly alleges that Mr. Goldman or DEC Goldman are familiar with TTAC's business model and part of a cursorily alleged conspiracy to infringe on TTAC's trademark. But TTAC does not allege that Mr. Goldman or DEC Goldman themselves directed, controlled, or were the moving force behind TTAC's allegations.[10] To be sure, TTAC has alleged that Mr. Goldman somehow gleaned knowledge of TTAC's business model from working for TTAC as an independent contractor, but these allegations do not pertain to TATC's alleged trademark infringement. TTAC has not adequately alleged these claims against Mr. Goldman or DEC Goldman.

### B. TTAC Has Failed to State a Claim for Civil Conspiracy.

In Tennessee, civil conspiracy claims require, among other elements, a combination of multiple persons with shared intent. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). However, under the intracorporate conspiracy doctrine, there can be no actionable conspiracy between officers, directors, employees, and other agents acting on behalf of a single corporation within the scope of that employment. *Id.* at 703–04.

---

[10] TTAC's failure to attribute specific conduct to any defendant besides TATC provides grounds for dismissal under Rule 12(b)(6), as well as Rule 12(b)(3).

Here, Mr. Goldman and DEC Goldman are alleged to be agents of TATC and there are no allegations that either acted outside the scope of that employment or agency.  [Doc. 48, p. 4, at ¶¶ 16–17].  Consequently, TTAC also fails to state a claim for civil conspiracy against Mr. Goldman and DEC Goldman, along with Co-Defendants.

In sum, TTAC's allegations fail to establish that Mr. Goldman or DEC Goldman could be liable for trademark infringement, unfair competition, or violations of the TCPA and fail to allege an actionable civil conspiracy due to the intracorporate conspiracy doctrine.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and dismiss this case for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Samuel P. Funk
Samuel P. Funk (No. 19777)
R. Mark Donnell, Jr. (No. 30136)
SIMS|FUNK, PLC
3322 West End Avenue, Suite 200
Nashville, Tennessee 37203
(615) 292-9335
(615) 649-8565 (fax)
sfunk@simsfunk.com
mdonnell@simsfunk.com

*Counsel for Defendants Manny Goldman
and DEC Goldman*

02551158 7

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was served on the

following counsel via the Court's CM/ECF system on this 9th day of November, 2020:

Anthony F. Schlehuber
BAKER, DONELSON, BEARMAN, CALDWELL
   & BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, TN 37201
aschlehuber@ bakerdonelson.com

L. Clint Crosby *(pro hac vice)*
Phillip Parham *(pro hac vice)*
Ciera N. Locklair *(pro hac vice)*
BAKER, DONELSON, BEARMAN, CALDWELL
   & BERKOWITZ, P.C.
3414 Peachtree Road, N.E., Suite 1600
Atlanta, GA 30326
ccrosby@bakerdonelson.com
pparham@bakerdonelson.com
clocklair@bakerdonelson.com

*Counsel for TTAC Publishing, LLC*

Robb S. Harvey
Quynh-Anh D. Kibler
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Robb.harvey@wallerlaw.com
Qa.kibler@wallerlaw.com

*Counsel for Jonathan Hunsaker*

Winston S. Evans
Sean C. Wlodarczyk
EVANS, JONES & REYNOLDS, P.C.
410 Commerce Street, Suite 710
Nashville, TN 37219
wevans.ef@erjlaw.com
swlodarczyk@erjlaw.com

James E. Magleby *(pro hac vice)*
Christine T. Greenwood *(pro hac vice)*
Bryant L. Watson *(pro hac vice)*
Magleby Cataxinos & Greenwood, PC
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101
magleby@mcg.law
greenwood@mcg.law
watson@mcg.law

*Counsel for Defendants TATC Publishing,*
*LLC, Jeff Hays, Patrick Gentempo*

/s/ Samuel P. Funk