| | | |
|---|---|---|
| TTAC Publishing, LLC, | ) | |
| | ) | |
|    Plaintiff, | ) | Civil Action File No. |
| | ) | 3:20-cv-00696 |
| v. | ) | |
| | ) | |
| TATC Publishing, LLC; DEC Goldman, | ) | Judge Richardson |
| Inc.; Jonathan Hunsaker; Jeff Hays; Manny | ) | Magistrate Judge Frensley |
| Goldman; and Patrick Gentempo, | ) | |
| | ) | |
|    Defendants. | ) | |

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND MEMORANDA IN SUPPORT THEREOF

COMES NOW, TTAC Publishing, LLC ("TTAC" or "Plaintiff"), Plaintiff in the above-styled action, and hereby files its collective Response and Memorandum in Opposition to (1) TATC Publishing, LLC ("Defendant TATC"), Jeff Hays ("Defendant Hays"), and Patrick Gentempo's ("Defendant Gentempo") Motion to Dismiss for lack of personal jurisdiction, improper venue, and for failure to state a claim upon which relief can be granted [Doc. 55]; (2) Defendant Jonathan Hunsaker's ("Defendant Hunsaker") Motion to Dismiss for lack of personal jurisdiction and improper venue [Doc. 61]; and (3) Defendants Manny Goldman ("Defendant Manny Goldman") and DEC Goldman, Inc.'s ("Defendant DEC Goldman") Motion to Dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted [Doc. 65] (collectively the "Motions to Dismiss"). In support of its Opposition, TTAC states as follows:

# INTRODUCTION

Plaintiff filed this action against Defendants alleging trademark infringement arising under the Lanham Act, as amended 15 U.S.C. §§ 1114(1) and 1125(a); Tennessee Trademark Infringement, Tenn. Code Ann. § 47-25-512; Common Law Tennessee Unfair Competition; Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.; and a claim for Civil Conspiracy. In response, the individual Defendants have filed separate Motions to Dismiss, which contain similar arguments. Collectively, Defendants' Motions advance three grounds for dismissal of Plaintiff's claims: (1) lack of personal jurisdiction over Defendants; (2) improper venue; and (3) failure to state a claim upon which relief can be granted. However, because the allegations contained within Plaintiff's Verified First Amended Complaint ("Complaint") establish a *prima facie* case for personal jurisdiction, venue, and each of Plaintiff's claims, Defendants' Motions should be denied.

# RELEVANT ALLEGATIONS

Plaintiff is an industry leader specializing in the creation and marketing of information relating to cancer, cancer prevention, and cancer treatment. [Doc. 48 at ¶ 22]. Plaintiff has conducted its operations out of its headquarters in Portland, Tennessee since 2015. [Doc. 48 at ¶ 1]. A large part of Plaintiff's success is due to its creation and development of docuseries addressing cancer and its prevention and treatment—particularly its docuseries, "The Truth About Cancer." [Doc. 48 at ¶¶ 22, 48]. Since 2014, Plaintiff has secured over $25 million in customer transactions, and it has established an impeccable reputation and significant goodwill through the promotion and use of its registered trademark and logo mark. [Doc. 48 at ¶ 40, 41]. But Plaintiff's success and brand recognition led to two former long-time business associates seeking overnight success by using their insider knowledge of Plaintiff's business to infringe on

2

Plaintiff's intellectual property so that they could improperly trade off Plaintiff's reputation and goodwill. Indeed, this trademark infringement case arises out of a civil conspiracy between individual defendants Hunsaker, Goldman, Hays, and Gentempo to form a company—Defendant TATC—with the purpose of selling copycat products by infringing on Plaintiff's trademark and logo and making representations that were designed to confuse the public as to TATC's affiliation with Plaintiff. [Doc. 48 at ¶¶ 9, 14, 33-51].

Individual defendants Hunsaker—Plaintiff's former member and Chief Marketing Officer from 2014 to 2018—and Goldman—Plaintiff's former Director of Traffic from 2015 to 2018— gained insider information about Plaintiff's business strategies, marketing strategies, products and customers through their years of work for Plaintiff. [Doc. 48 at ¶¶ 29,30, 36-41]. Indeed, as two of Plaintiff's key personnel and as integral parts of Plaintiff's marketing campaigns from 2015 to 2018, Hunsaker and Goldman were aware that Plaintiff spent years developing a brand and reputation through its extensive use, promotion, and marketing of its trademark and logo. [Doc. 48 at ¶¶ 29, 30, 32, 36-41]. They were also well aware that Plaintiff's efforts resulted in developing a business that was highly profitable. [Doc. 48 at ¶ 40].

Immediately after their business relationships with Plaintiff were severed, Hunsaker and Goldman conspired with Hays and Gentempo (1) to create a company with a name that was confusingly similar to Plaintiff's (TATC Publishing, LLC v. TTAC Publishing, LLC); (2) to use the company to create and market the same types of products as Plaintiff's products; (3) to market those products to the same target consumers using the same marketing strategies and channels; and (4) to trade off Plaintiff's reputation and goodwill by adopting and utilizing an infringing mark and logo and by specifically referencing Plaintiff in their marketing campaigns to confuse the public into believing that their products were created by, endorsed by, or

3

Case 3:20-cv-00696   Document 67   Filed 11/23/20   Page 3 of 17 PageID #: 535

otherwise affiliated with Plaintiff. [Doc. 48 at ¶¶ 12-18, 33-51]. The product of the individual's conspiracy was Defendant TATC, which the individual conspirators used to accomplish their tortious goals.[1] [*Id.*].

Defendants' tortious conduct was specifically intended to profit at Plaintiff's expense. [*Id.*]. And after a cursory comparison of TATC's infringing mark and logo and Plaintiff's protected mark and logo, there is little doubt that the infringement was designed to confuse consumers and harm Plaintiff here in Tennessee:

 

And they succeeded. [Doc. 48 at ¶¶ 52-94].

Because Defendants operate in the same industry as Plaintiff and use the same business model and marketing strategies—including marketing their products to TTAC's current and potential customers using websites and social media to solicit sales from and deliver products to consumers throughout the nation—Plaintiff reasonably alleged that Defendants, through TATC, do business in Tennessee by:

> (1) selling and providing goods and services to and within this State, District, and Division; (2) advertising goods and services within this State, District, and Division; (3) soliciting business and investment within this State, District, and Division; and (4) deriving revenue from the sale of TATC offerings and provision of services within this State, District, and Division, without the consent or license from TTAC.

---

[1] Rather than being a named member of TATC, Defendant Goldman created—and is the sole member of—Defendant DEC Goldman, Inc., which is a member of TATC. [Doc. 48 at ¶ 16-17; Doc. 47-2 at ¶ 16-17].

4

[Doc. 48 at ¶ 12]. Tellingly, Defendants could have presented affidavits challenging these factual allegations, but they did not.[2] Instead, Defendants challenged only whether the factual allegations in Plaintiff's Complaint—taken as true—set forth a *prima facie* case for jurisdiction, venue, and the asserted claims. They do, and Defendants' Motions should be denied.

## ARGUMENT AND CITATION TO AUTHORITY

A. LEGAL STANDARDS

1. Rule 12(b)(2)

In considering a Motion to Dismiss for lack of personal jurisdiction, the Court has the discretion to "(1) rule on the motion on the basis of the affidavits and materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion." *Willock v. Hilton Domestic Operating Co., Inc.*, 3:20-CV-00042, 2020 WL 4207651, at *2 (M.D. Tenn. July 22, 2020) (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)). "It is in the court's discretion, based on the circumstances of the case, which path to choose." *Id.* Here, Defendants have challenged only whether Plaintiff has established a *prima facie* case for personal jurisdiction. In determining whether Plaintiff has met its "relatively slight" burden, the Court must construe the facts presented in the light most favorable to Plaintiff. *Willock*, 2020 WL 4207651, at *2 (citing *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360–61 (6th Cir. 2008)).

---

[2] Because TATC was formed specifically to produce and market products using the infringing mark and logo, Defendants' business in Tennessee gives rise to Plaintiff's claims. And although Defendants did not request discovery or an evidentiary hearing, Plaintiff is confident—and Defendants' failure to challenge the *verified* allegations in the Complaint through affidavits strongly suggests—that discovery would produce evidence supporting all of the Complaint's facts setting forth a *prima facie* case for jurisdiction and venue in this Court.

5

## 2. Rule 12(b)(3)

On a motion to dismiss for improper venue, the plaintiff bears the burden of "proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Gone To The Beach, LLC v. Choicepoint Services, Inc.*, 434 F. Supp. 2d 534, 536–37 (W.D. Tenn. 2006) (quotation marks and citation omitted). "[W]hether to dismiss or transfer is within the district court's sound discretion...." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir.1998).

## 3. Rule 12(b)(6)

In considering a motion to dismiss for failure to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Federal Rule of Civil Procedure 8(a)(2) requires only that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." "The court must determine only whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *Willock*, 2020 WL 4207651, at *2 (citation omitted). Plaintiff's allegations must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## B. THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER EACH DEFENDANT.[3]

"When a defendant files a motion to dismiss based on lack of personal jurisdiction, the burden is on the plaintiff to show that the court has personal jurisdiction." *Estate of Thomson v.*

---

[3] As stated in Movants' briefs, there are two types of personal jurisdiction—general and specific. TTAC concedes that no general personal jurisdiction exists over any Defendant. Accordingly, TTAC addresses only specific personal jurisdiction.

6

*Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008). The plaintiff need only make a *prima facie* showing of personal jurisdiction, and once he has done so, "the defendant cannot contest jurisdiction on the basis of a 'written submission[ ]' such as an affidavit. The defendant, rather, must either request an evidentiary hearing or restrict his argument to challenging the adequacy of the prima facie case as set forth in the complaint and any supporting materials." *Willock*, 2020 WL 4207651, at * 3 (citing *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020)).[4] "The court must accept the facts alleged[.]" *Id.*

The 6th Circuit conducts a three-part test in evaluating whether specific personal jurisdiction exists:

> (1) The defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;
>
> (2) The cause of action must arise from the defendant's activities in or contacts with the forum state; and
>
> (3) The acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Here, the allegations in Plaintiff's Complaint establish a *prima facie* case showing these requirements are met.

---

[4] Here, Plaintiff's Complaint makes more than just threadbare allegations—it is *verified*. The only Defendant that submitted an affidavit or any other evidence in support of his motion was Manny Goldman. [Doc. 66 (citing to Doc. 47-2)]. The 6th Circuit has held that if the Court chooses to decide a motion to dismiss under FCRP 12(b)(2) based only on whether the Complaint sets out a *prima facie* case for jurisdiction, it is improper to consider any affidavit submitted with the defendant's motion. *Malone*, 965 F.3d at 505-506. Although the Court has the discretion to permit discovery and to hold an evidentiary hearing, no Defendant requested an evidentiary hearing but instead they chose to challenge only the Complaint's *prima facie* case for jurisdiction. And while Defendants' purport to "reserve the right to submit affidavits and request an evidentiary hearing in the future[,]" [Doc. 56 n. 1], Plaintiff submits that Defendants' purported reservation is an impermissible attempt to have two bites at the same apple.

### 1. Defendants Have Purposefully Availed Themselves of this Court's Jurisdiction by Acting with the Specific Intent to Cause Harm to Plaintiff in Tennessee and by Doing Business in Tennessee.

Purposeful availment is "something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003). "Put another way, 'the question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign.'" *Willock*, 2020 WL 4207651, at *5 (quoting *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 884 (2011)).

Defendants uniformly argue that Plaintiff fails to allege any conduct *in* Tennessee that would satisfy the purposeful availment prong and that "plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). That is not the case. Plaintiff alleges that the individual Defendants conspired to use Hunsaker and Goldman's inside knowledge of Plaintiff's business and marketing strategies to harm Plaintiff in Tennessee by creating and selling a product that Plaintiff's target consumers would believe came from or was affiliated with Plaintiff. Hunsaker—formerly one of three members of Plaintiff—knew that Plaintiff had conducted its business from its Tennessee headquarters since 2015. [*See* Doc. 48 at ¶¶ 21, 33]. And with Hunsaker knowing that Plaintiff had generated more than $25 million in transactions since 2014, the conspirators knew that trading off Plaintiff's reputation and goodwill would be highly beneficial to Defendants' efforts. [Doc. 48 at ¶ 41].

For the conspiracy to succeed, however, they needed to create a company with a name and a mark and logo that could be easily confused with Plaintiff's. Accordingly, they created

TATC Publishing, LLC—only one transposed letter away from Plaintiff TTAC Publishing, LLC. They adopted a mark and logo for TTAC using the same format, font, color and layout as Plaintiff's registered mark and logo and specifically marketed a copycat product and expressly referred to Plaintiff on Defendants' website. [Doc. 48 at ¶¶ 45-50].

"In *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court held that a plaintiff can establish personal jurisdiction when it alleges that the defendant 'expressly aimed' tortious conduct at the forum in question and the 'brunt of the harm' is felt there." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012). In applying the "Calder-effects" test, "even a single act by [a] defendant directed toward [the relevant forum] that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir.2001). Here, Defendants intentionally and knowingly sought to "caus[e] a consequence in [Tennessee]" through their intentionally tortious conduct that was directed to cause harm to Plaintiff in Tennessee. *S. Mach.*, 401 F.2d at 381. Indeed, by seeking to trade off Plaintiff's reputation by confusing the public as to the source of their products, Defendants intended for their actions to inflict damage and affect commerce in Tennessee. And Defendants succeeded—their activities have caused and are continuing to cause Plaintiff harm in Tennessee. [Doc. 48 at ¶¶ 52-94].

Even if it is arguable that Defendants' actions, which were specifically intended to effect Plaintiff in Tennessee, do not satisfy the Calder-effects test, Plaintiff alleged that the conspiracy was based on two former TTAC employees' insider knowledge of Plaintiff's business and marketing strategies and their knowledge that Plaintiff's mark and logo were key aspects of Plaintiff's success. It was because of this insider knowledge, gained from their long-time

9

business relationships with Plaintiff, that the conspiracy was borne and was successful. And because Defendants carried out their conspiracy through TATC, which markets its products in the same marketing channels as Plaintiff using the infringing mark and logo, Plaintiff had a reasonable basis for alleging that Defendants conduct business in the district and state where this Court sits. By alleging that Defendants conduct business here, Plaintiff has set forth a *prima facie* case that Defendants purposefully availed themselves of this Court's jurisdiction.

> **2. Plaintiff's Causes of Action Arise From Defendants' Tortious Conduct Specifically Directed at Causing Plaintiff Harm in Tennessee.**

*Southern Machine's* second prong requires that the plaintiff's causes of action "arise from" the defendant's conduct aimed at the forum state. The 6th Circuit has "articulated the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 553 (6th Cir. 2007) (citations omitted). The 6th Circuit has also characterized this standard as a "lenient standard" and has explained that "the cause of action need not 'formally' arise from defendant's contacts." *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir.2002)).

Here, there is little doubt that Plaintiff alleges facts sufficient to satisfy the second prong. Again, the conspiracy giving rise to the infringement was borne out of Hunsaker and Goldman's long-time business dealings with Plaintiff. Without their intimate knowledge of Plaintiff's profitability, reputation, and goodwill in the marketplace, they would not have formed a company so obviously designed to confuse Plaintiff's current and potential customers. Additionally, Defendants' specific intent was to confuse the public in order to misappropriate Plaintiff's business and to cause an effect on Plaintiff in Tennessee. Their creation and use of

10

TATC and its undeniably infringing mark and logo was the vehicle by which they carried out their conspiracy. Again, Plaintiff specifically alleges that Defendants conducted business in this state and district and alleges facts showing that Defendants' actions giving rise to Plaintiff's claims were directed at causing harm in Tennessee, which satisfies Plaintiff's burden to set forth a *prima facie* case that jurisdiction is proper. Therefore, the second prong is satisfied.

   **3. Because Defendants Specifically Sought to Cause Harm to Plaintiff in Tennessee, Exercising Jurisdiction Over Them is Reasonable.**

The reasonableness prong of the *Southern Machine* test requires that "the acts of the defendant *or consequences caused by the defendant* must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach.*, 401 F.2d at 381 (emphasis added). Here, Plaintiff has been directing its operations out of Tennessee since 2015. Hunsaker knew this, as he was one of three of Plaintiff's original members, and he was an integral part of directing those operations. He did not leave the company until August 1, 2018. Goldman was also an integral part of Plaintiff's marketing operations from 2015 to 2018, a key part of which was the development and use of the protected trademark and logo that Defendants copied. It is because of Hunsaker's and Goldman's familiarity with Plaintiff's business operations that Defendants' conspiracy was successful. Additionally, Plaintiff has alleged that the individual defendants used TATC to carry out their conspiracy and that TATC's infringing actions include conducting business in Tennessee.

Defendants could have submitted sworn affidavits and requested an evidentiary hearing to challenge Plaintiff's allegations. They did not. Instead, Defendants restricted their arguments to challenging only whether Plaintiff's Complaint set forth a *prima facie* case for jurisdiction, and the factual allegations of the Complaint—taken as true—satisfy Plaintiff's burden.

11

Case 3:20-cv-00696   Document 67   Filed 11/23/20   Page 11 of 17 PageID #: 543

### C. THE COURT SHOULD DENY DEFENDANTS' MOTIONS BECAUSE VENUE IS PROPER.

Venue is proper in this Court because this action satisfies the requirements of 28 U.S.C. § 1391. In federal question cases, venue is proper in:

> (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The Defendants are not all residents of Tennessee, but venue is proper because Plaintiff's claim arose in the Western District of Tennessee or a substantial part of the property that is the subject of the action is located in this District.

Defendants incorrectly argue that Plaintiff has failed to plead that a substantial part of the events or omissions giving rise to its claims occurred in Tennessee. [Doc. 56 at 9]. Reading the Complaint as a whole, Plaintiff has clearly satisfied its burden of establishing venue. To begin, Plaintiff's claims initially grow out of Hunsaker's and Goldman's business relationships with Plaintiff from 2014 through 2018 and their desire to use that information to trade off of Plaintiff's reputation soon after separating from Plaintiff. The conspiracy developed on their knowledge of the non-public information about Plaintiff's business. Further, the Western District of Tennessee is where Defendants intended for the harm to occur.

And if that were not enough to establish venue, Plaintiff alleged that Defendants' infringing business actions through TATC occurred in the Western District of Tennessee. [Doc. 48 at ¶¶ 9-20]. Defendants have neither submitted evidence refuting Plaintiff's verified

allegations that venue is proper in this Court, nor have they identified a transfer district in which venue would be proper. Accordingly, Defendants' Motions should be denied.

**D.     FAILURE TO STATE A CLAIM**

Lastly, in their individual Motions, Defendants Goldman, Hays, and Gentempo move the Court to dismiss Plaintiff's claims for failure to state a claim. The crux of their argument is that although Plaintiff pled that they were involved in a civil conspiracy giving rise to Plaintiff's claims under the Lanham Act and Tennessee trademark infringement and consumer protection laws, (1) Plaintiff failed to plead that any specific individual directed, controlled, or was the moving force behind the infringing activity, [Doc. 66 at 23], and (2) under the intracorporate conspiracy immunity doctrine Plaintiff has no claim for civil conspiracy because "there can be no actional conspiracy between officers, directors, employees, and other agents acting on behalf of a single corporation within the scope of that employment." [Doc. 66 at 22-23; Doc. 56 at 10-12]. Neither of these arguments have merit, as they misrepresent what is alleged in the Complaint.

> **1.     TTAC Pled Facts Sufficient to State Claims for Civil Conspiracy Against Goldman, Hays, and Gentempo.**

As Plaintiff's claims are rooted in the civil conspiracy by the individual defendants to trade off Plaintiff's reputation and goodwill, Plaintiff begins by showing that it has sufficiently pled a claim for civil conspiracy. The elements of a claim for civil conspiracy under Tennessee law are "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Here, TTAC alleged each of the Defendants, "in a concerted action conspired to infringe TTAC's rights" in its registered mark and logo. [Doc. 48 at ¶ 90].

13

Specifically, using Hunsaker's and Goldman's insider knowledge of Plaintiff's marketing strategies and the success that it built through brand recognition, each individual defendant came together to formulate a plan to trade off Plaintiff's reputation in the marketplace by creating a copycat company with an infringing mark and logo designed to confuse Plaintiff's current and potential customers as to an affiliation between TTAC and TATC and its products. [Doc. 48 at ¶¶ 13, 14]. In furtherance of the conspiracy, they formed TATC and adopted and used an infringing logo in violation of the Lanham Act, as amended 15 U.S.C. §§ 1114(1) and 1125(a); Tennessee Trademark Infringement, Tenn. Code Ann. § 47-25-512; Common Law Tennessee Unfair Competition; and Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq. [*See* Doc. 48 at ¶¶ 52 – 88]. As a result of the individual Defendants' actions, Plaintiff has suffered and will continue to suffer irreparable harm. [Doc. 48 at ¶¶ 59, 65, 72, 79, 84, 85, and 94]. These allegations sufficiently plead a *prima facie* case establishing Plaintiff's claim for civil conspiracy against the individual Defendants.

2. **The Intracorporate Conspiracy Immunity Doctrine Does Not Shield Goldman, Hays, and Gentempo from Liability Such That Plaintiff Fails to State Claims Against Them for Actions Taken Through TATC.**

The individual Defendants' claims that they are shielded by the intracorporate conspiracy immunity doctrine are without merit. The intracorporate conspiracy immunity doctrine stands for the proposition that "where each alleged co-conspirator is an agent or employee of the same corporate entity and is acting on the corporation's behalf," each co-conspirator's identity is merged into the single identity of the corporation, and there can be no conspiracy without two or more persons. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002).

Here, the doctrine is inapplicable. Importantly, Plaintiff alleges that the conspiracy began *before* TATC's formation and that TATC and its infringing mark and logo were formed *in*

*furtherance of* the conspiracy. [Doc. 48 at ¶¶ 11-15]. Indeed, TATC was created specifically so that the public would confuse TATC Publishing, LLC with TTAC Publishing, LLC. Thus, each of the individual defendants was acting on his own behalf during the conspiracy and not as an agent of TATC.[5] Indeed, Plaintiff's well-pleaded claims against TATC for infringement under federal and Tennessee law are also well-pleaded claims against the individual defendants because Plaintiff has sufficiently pled claims for civil conspiracy against them.

Moreover, Defendants' argument that they cannot be held liable because they were not the person directing the wrongful activity of TATC also fails. As co-conspirators, Plaintiff has alleged that *each* of the individuals is a "moving, active, and conscious force behind [TATC's] infringement," even if Plaintiff does not currently have evidence to know whether all or only some of the individuals may have truly been directing the infringement. [*See* Doc. 56 at 11 (quoting *Coty, Inc. v. Cosmopolitan Cosmetics, Inc*., 432 F. Supp. 3d 345, 353 (S.D.N.Y. 2020)]. And if only some were truly directing TATC's infringing activity, the others are not shielded from liability. "Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme." *Trau-Med*, 71 S.W.3d at 703 (Tenn. 2002) (citing *Brown v. Birman Managed Care, Inc.*, 42 S.w.3d 62, 657 (Tenn. 2001)).

In sum, TTAC has adequately pleaded all elements sufficient to establish a *prima facie* case against each individual Defendant to this action for trademark infringement and unfair competition under the Lanham Act and Tennessee law and for civil conspiracy under Tennessee

---

[5] As to Defendant Goldman, Plaintiff alleged that he formed DEC Goldman, Inc. specifically to shield himself from being named as a member of TATC, and the other individual defendants may have formed similar companies—which can only be verified through discovery. [Doc. 48 at ¶ 16-17]. This allegation is based upon information and belief derived from the Declaration of Manny Goldman, in which he states that he formed DEC Goldman, Inc. contemporaneously with TATC's formation. [*See* Doc. 47-2 at ¶¶ 16-20].

law. Accordingly, Defendants' Motions to Dismiss for failure to state a claim upon which relief can be granted should be denied.

## CONCLUSION

For the reasons set forth above, TTAC respectfully requests that the Court deny Defendants' Motions to Dismiss in their entirety.

Respectfully submitted this 23rd day of November, 2020.

        **BAKER, DONELSON, BEARMAN,**
        **CALDWELL & BERKOWITZ, P.C.**

        */s/L. Clint Crosby*
        L. Clint Crosby
        Georgia Bar No. 197877
        Phillip Parham
        Georgia Bar No. 942874
        Ciera N. Locklair
        Georgia Bar No. 887772
        Monarch Plaza, Suite 1500
        3414 Peachtree Road, N.E.
        Atlanta, Georgia 30326
        404-577-6000 / 404-221-6501 fax
        ccrosby@bakerdonelson.com
        pparham@bakerdonelson.com
        clocklair@bakerdonelson.com

        *Counsel for TTAC Publishing, LLC*
        *Admitted Pro Hac Vice*

        Anthony F. Schlehuber
        TN Bar No. 37334
        211 Commerce Street, Suite 800
        Nashville, TN 37208
        Telephone: (615) 726- 5600
        Facsimile: (615) 726- 0464
        Aschlehuber@bakerdonelson.com

        *Counsel for TTAC Publishing, LLC*

**CERTIFICATE OF SERVICE**

    This will certify service of a copy of the foregoing ***PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF*** by the CM/ECF online filing system with the U.S. District Court for the Middle District of Tennessee which will automatically send email notification to the following counsel of record:

Winston S. Evans
Sean C. Wlodarczyk
EVANS, JONES & REYNOLDS, P.C.
401 Commerce Street, Suite 710
Nashville, TN 37219
wevans.ef@ejrlaw.com
swlodarczyk@ejrlaw.com

James E. Magleby (admitted *pro hac vice*)
Christine T. Greenwood (admitted *pro hac vice*)
Bryant L. Watson (admitted *pro hac vice*)
MAGLEBY CATAXINOS & GREENWOOD, PC
170 South Main Street, Ste 1100
Salt Lake City, UT 84101
magleby@mcg.law
greenwood@mcg.law
watson@mcg.law

*Attorneys for Defendants TATC Publishing, LLC, Jeff Hays, and Patrick Gentempo*

Samuel P. Funk
R. Mark Donnell, Jr.
SIMS|FUNK, PLC
3322 West End Avenue, Ste 200
Nashville, TN 37203
sfunk@simsfunk.com
mdonnell@simsfunk.com

*Attorneys for Defendant Manny Goldman*

Robb S. Harvey
Quynh-Anh D. Kibler
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
robb.harvey@wallerlaw.com
qa.kibler@wallerlaw.com

Marc J. Rachman (*pro hac vice motion forthcoming*)
DAVIS & GILBERT, LLP
1740 Broadway
New York, New York 10019
mrachman@dglaw.com

*Counsel for Specially-Appearing Defendant Jonathan Hunsaker, Making a Limited Appearance*

    This 23rd day of November, 2020.

                                                */s/L. Clint Crosby*
                                                L. Clint Crosby
                                                Georgia Bar No. 197877
                                                *Counsel for TTAC Publishing, LLC*
                                                *Admitted Pro Hac Vice*